UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| ALEX KOVATSENKO, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 23-066-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| KENTUCKY COMMUNITY AND | ) | **MEMORANDUM OPINION** |
| TECHNICAL COLLEGE, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Kentucky Community and Technical College, d/b/a Bluegrass Community and Technical College, (Bluegrass) has filed a motion for judgment on partial findings. It asserts that Plaintiff Alex Kovatsenko's claim under the Americans with Disabilities Act (ADA) is barred by sovereign immunity, and that Kentucky Revised Statute (KRS) § 344.040 is inapplicable. [Record No. 7] Bluegrass further contends that emotional distress damages are unavailable under the Rehabilitation Act and ADA. And it further argues that Kovatsenko cannot recover punitive damages under any cause of action that has been asserted. [*Id.*]

Kovatsenko concedes punitive damages cannot be recovered and emotional distress damages are unavailable under the Rehabilitation Act. [Record No. 11] He asserts, however, that Congress abrogated Bluegrass' sovereign immunity, emotional distress damages are proper under Title II of the ADA, and claim under KRS 344.040 survives dismissal. [*Id.*] Having reviewed the parties' arguments, the Court concluded that Bluegrass' motion should be granted, in part, and denied, in part. Emotional distress damages are unavailable following

the decision in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), and KRS 344.040 applies only in the employment context.

I.

Kovatsenko enrolled in the Diagnostic Medical Sonography (DMS) program at Bluegrass for the 2021 fall semester. [Record No. 1-3] He allegedly was diagnosed with mild borderline autism and informed Bluegrass and the DMS program coordinator of a need for accommodations. [*Id.*] Accommodations were granted on September 27, 2021, allowing the plaintiff "more time on exams and allowing [him] to use recording devices in lectures." [Record No. 7] Approximately one month later, the DMS program coordinator dismissed Kovatsenko from the program for the following three reasons: (1) a behavioral episode at a clinical site in front of a patient; (2) the plaintiff's grades had fallen below the minimum requirements to remain in the program; and (3) Bluegrass was unable to provide the plaintiff with an alternative clinical placement because of staff shortages. [Record No. 1-3] Kovatsenko contends that the reasons given were "fabricated". He filed suit in the Fayette Circuit Court, asserting that Bluegrass violated Section 504 of the Rehabilitation Act, Title II of the ADA, and Kentucky Revised Statute § 344.040. [*Id.*]

II.

The same standard of review applies to motions for judgment on the pleadings under Rule 12(c) and motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Horen v. Bd. of Educ. of Toledo City School Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009). Under this standard, the Court must determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

Although a Complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Further, while the Court is required to accept all of the plaintiff's factual allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

In general, where "matters outside the pleadings are presented to and not excluded by the court, the motion will be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  A court, however, may consider "exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims therein without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (quotation marks and citation omitted).

### III.

#### A.

Bluegrass argues that the plaintiff's ADA claim is barred by sovereign immunity. [Record Nos. 7, 14] A state agency such as Bluegrass is generally entitled to sovereign immunity from suit under the Eleventh Amendment of the United States Constitution.  *See*

*Davis v. Kentucky Community and Technical College System*, 2018 WL 1865166, at *2 (E.D. Ky. Apr. 18, 2018) ("Eleventh Amendment immunity shields both states and their agencies from suit. . . [and Bluegrass] "is an agency of the state entitled to Eleventh Amendment immunity."). But Kovatsenko contends that Congress abrogated Bluegrass' Eleventh Amendment immunity. [Record No. 11]

"[T]he Supreme Court has held that Congress's attempted abrogation is only valid in limited circumstances, depending upon the nature of the ADA claim." *Babcock v. Michigan*, 812 F.3d 531, 534 (6th Cir. 2016). Courts consider three items "on a claim-by-claim basis" to determine whether the ADA abrogates state sovereign immunity for claims brought under Title II:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006). Bluegrass "does not argue the first step," for purposes of this motion. [Record No. 14, p. 3 n. 5]

For the second step, Kovatsenko acknowledges that he did not "plead a specific Fourteenth Amendment violation" but states that "the facts in the Complaint demonstrate that [his] rights under the [Equal Protection Clause] were violated by the Defendant." [Record No. 11] His brief lacks further argument regarding an alleged Fourteenth Amendment violation, and mere conclusory statements are insufficient to put a matter in issue. *See Phipps v. Potter*, No. 08–CV–00736, 2010 WL 439282, at *4 (S.D. Ohio Feb. 2, 2010) ("A conclusory statement made in a responsive document is simply insufficient to defeat a motion to dismiss."). His conclusory statement is also insufficient because disabled persons are a non-suspect class and

- 4 -

rational basis scrutiny applies. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442–46 (1985). Under rational basis, "the burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Board of Trustees v. Garrett*, 531 U.S. 356, 367 (2001) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Kovatsenko fails to satisfy this burden.

The third step requires consideration of "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid." *Georgia*, 546 U.S. at 159. "Congress's abrogation power is 'nevertheless valid' where Title II imposes requirements that are 'congruent and proportional' to an identified 'pattern of [unconstitutional] exclusion and discrimination'—even if it sweeps in some conduct that is not itself unconstitutional." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1026 (5th Cir. 2022) (citing *Tennessee v. Lane*, 541 U.S. 509, 531 (2004)); *see also Saqr v. University of Cincinnati*, No. 18-cv-542, 2019 WL 699347, at *5 (S.D. Ohio Feb. 20, 2019) ("To determine whether the abrogation of sovereign immunity is valid for a Title II claim that does not implicate the Fourteenth Amendment, the third portion of the *Georgia* inquiry incorporates the 'congruence and proportionality' test set forth in [*City of Boerne v. Flores*], 521 U.S. 507, 520-521 (1997).").

"In conducting the 'congruence and proportionality' inquiry, a court must determine: (1) the fundamental right that Congress sought to enforce; (2) whether there is a history of unconstitutional discrimination that supports Congressional determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response." *Saqr*, 2019 WL 699347, at *5 (citing *Tennessee v. Lane*, 541 U.S. 509, 520-23 (2004)). Kovatsenko argues that Title II validly waives state immunity for claims relating to "public education."

[Record No. 11][1]  While public education is not a fundamental right, courts have "concluded that Title II was a congruent and proportional response to discrimination against the disabled in education."  *Doe v. Board of Trs. of Univ. of Illinois*, 429 F. Supp. 2d 930, 939 (N.D. Ill. 2006).  Bluegrass counters that "'public education' . . . is too broad an inquiry" in this case, and "post-graduate or professional schools are different."  [Record No. 14]

"Since *Georgia*, the Sixth Circuit has not determined whether Title II validly abrogates Eleventh Amendment immunity in public education cases that do not involve constitutional violations."  *Jones v. University of Memphis & Tenn. Bd. of Regents*, No. 15-cv-02148, 2016 U.S. Dist. LEXIS 201161, at *10 (W.D. Tenn. Sept. 9, 2016).  But "[t]he First, Third, Fourth, and Eleventh Circuits have determined that abrogation is valid for such claims. . . and district courts in this circuit have adopted their analyses[.]" *Id.*  Additionally, "post-*Georgia* case law in many circuits overwhelmingly suggests that Congress validly abrogated state sovereign immunity for ADA claims involving public universities."  *Id.* at *11.  Various courts have distinguished cases involving professional licensing, such as a medical board revoking a physician's license.  *See, e.g.*, *Guttman v. Khalsa*, 669 F.3d 1101, 1125 (10th Cir. 2012) ("Title II does not validly abrogate New Mexico's sovereign immunity in the context of professional licensing."); *Constantine v. New Jersey Dep't of Banking*, No. 22-cv-02678, 2023 U.S. Dist. LEXIS 50768 (D.N.J. Mar. 24, 2023).  But there is no indication in this case that the Diagnostic Medical Sonography program at Bluegrass Community and Technical College should be treated differently than a public university program.  *See Woodward v. Elizabethtown Cmty.*

---

[1]   Kovatsenko provides little analysis to support his argument, with pages 4-7 almost entirely copied verbatim from *W.H. by & through M.H. D.R. v. Tennessee Dep't of Educ.*, No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016).

- 6 -

*& Tech. College*, No. 14-CV-00776, 2015 U.S. Dist. LEXIS 94365, at *9 (W.D. Ky. July 20, 2015) ("The state expressly recognizes KCTCS as a public institution within its postsecondary education system.").

### B.

Bluegrass next contends that emotional distress damages are unavailable under Title II of the ADA after *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022). [Record No. 7] The Supreme Court of the United States decided *Cummings* on April 28, 2022, holding that plaintiffs cannot recover emotional distress damages under the Rehabilitation Act and the Affordable Care Act. 142 S. Ct. at 1576. Congress passed these statutes pursuant to its spending power, which allows Congress to "fix the terms on which it shall disburse federal money to the States." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). "[L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Id.* "The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the 'contract.'" *Id.* Therefore, Congress's conditions on federal money, if any, must be unambiguous. *Id.*

The Court in *Cummings* stated: "[W]e may presume that a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the usual contract remedies in private suits." 142 S. Ct. at 1571 (citing *Barnes v. Gorman*, 536 U.S. 181, 187-88 (2002)). It pointed to its earlier decision in *Barnes*, which held that "punitive damages are unavailable in private actions brought under these statutes" because punitive damages are not a traditional contract remedy. *Id.* at 1571. Likewise, "[i]t is hornbook law that 'emotional distress is generally not compensable in contract,' just as 'punitive

damages . . . are generally not available for breach of contract.'" *Id.* (first quoting D. LAYCOCK & R. HASEN, MODERN AMERICAN REMEDIES 216 (5th ed. 2019); and then quoting *Barnes*, 536 U.S. at 187). Thus, emotional distress damages are not recoverable under the Rehabilitation Act and the Affordable Care Act. *Id.* at 1576.

The same logic applies to private actions brought under Title II of the Americans with Disabilities Act. "Because Title II of the ADA incorporates the remedies set forth in the [Rehabilitation Act] (which, in turn, incorporates the remedies set forth in Title VI of the Civil Rights Act), it therefore follows that emotional distress damages are also not available in suits brought under the ADA." *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 20-CV-11, 2023 U.S. Dist. LEXIS 10565, at *6-7 (S.D. Ill. Jan. 20, 2023); *see also Montgomery v. Dist. of Columbia*, No. CV 18-1928, 2022 WL 1618741, at *24 (D.D.C. May 23, 2022) ("Title II of the ADA incorporates the 'remedies, procedures, and rights set forth in' the Rehabilitation Act, 42 U.S.C. § 12133; hence, if a certain category of damages is not available under Section 504, it is not available under Title II either."). Here, Kovatsenko request for emotional distress damages are unavailable under Title II of the ADA.

## C.

Bluegrass' final argument is that the plaintiff's Kentucky Civil Rights claim should be dismissed because Kovatsenko was not an employee, as required by the plain language of KRS § 344.040. [Record No. 7] The statute states that "[i]t is an unlawful practice for an *employer*," to discriminate against an employee. KRS §344.040(1) (emphasis added).

Kovatsenko concedes that he "is not considered an employee of [Bluegrass]" but argues that "[i]n two Kentucky cases, . . . the plaintiffs were students at the University of Kentucky and sued for disability discrimination under KRS 344.040." [Record No. 11] Kovatsenko's

cited cases do not adequately address the issue of employment because each case was decided on the plaintiff's lack of disability or handicap. *See Hash v. University of Ky.*, 138 S.W.3d 123, 129 (Ky. Ct. App. 2004) ("Therefore, we find that appellant failed to prove his prima facie case, as he was not an 'otherwise qualified handicapped person' apart from his disability."); *Stathis v. University of Ky.*, No. 2004-CA-000556, 2005 WL 1125240, at *8 (Ky. Ct. App. May 13, 2005) ("Upon the record, we do not believe there are genuine issues of material fact regarding [the plaintiff's] disability claim.").

Courts that have considered this issue have determined that an employer-employee relationship is essential. In *Stewart v. University of Louisville*, the plaintiff received a stipend as a graduate student before being dismissed from the program for failing to complete her thesis. 65 S.W.3d 536 (Ky. Ct. App. 2001). The Court of Appeals of Kentucky held that "the trial court did not err in determining as a matter of law that [the plaintiff] was not an employee of the university. Therefore, the trial court properly dismissed her claims under KRS Chapter 344 and KRS Chapter 61." *Stewart*, 65 S.W.3d at 540. Similarly, in *Zolner v. U.S. Bank National Association*, the "[p]laintiff . . . failed to state a claim under the KCRA for disability discrimination because [the defendant] was not her employer, as is required under KRS § 344.040." No. 15-cv-00048, 2015 U.S. Dist. LEXIS 160550, at *9 (W.D. Ky. Dec. 1, 2015). The undersigned agrees with this analysis. And here, Kovatsenko concedes that he lacks a present or past employment relationship with Bluegrass, as required by the statute.

## IV.

As noted above, Kovatsenko concedes that punitive damages may not be recovered, and emotional distress damages are unavailable under the Rehabilitation Act. Further,

emotional distress damages are unavailable under Title II of the ADA, and KRS §344.040 applies only in the employment context. Accordingly, it is hereby

**ORDERED** as follows:

1. Defendant Bluegrass' motion for judgment on the pleadings [Record No. 7] is **GRANTED**, in part and **DENIED**, in part.

2. Plaintiff Alex Kovatsenko's claim under KRS §344.040 and demand for punitive and emotional distress damages are **DISMISSED**, with prejudice.

Dated: May 10, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky